STRAUB, Circuit Judge,
dissenting:
The majority today finds that the District Court properly excluded evidence of Michelle Favreau’s pending appeal to the Vermont Supreme Court as irrelevant to Favreau’s defense to charges of international parental kidnapping. Because I believe the excluded evidence tends to show that Favreau lacked the specific intent required by the international parental kidnapping statute, I would find that the evidence was relevant and that the District Court erred in excluding it. Therefore, I respectfully dissent.
Under the “very low standard” set by the Federal Rules of Evidence, United States v. Al-Moayad, 545 F.3d 139, 176 (2d Cir.2008), evidence is relevant and therefore admissible if it has “any tendency” to make “any fact” in issue more or less probable than it would be without the evidence, Fed.R.Evid. 401; see Fed. R.Evid. 402 (“All relevant evidence is admissible .... ”). The length of the chain of inferences required to show the probative value of any evidence is not determinative of whether the evidence is relevant. See United States v. Quattrone, 441 F.3d 153, 188 (2d Cir.2006) (“[S]o long as a chain of inferences leads the trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded at the threshold relevance inquiry.”); United States v. Ravich, 421 F.2d 1196, 1204 n. 10 (2d Cir.) (Friendly, J.) (“The length of the chain of inferences necessary to connect the evidence with the ultimate fact to be proved *692 ... does not render the evidence irrelevant.”), cert. denied, 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970). Likewise, the mere fact that proffered evidence came into existence after the events that the evidence is proffered to prove does not render the evidence irrelevant. See United States v. Kelley, 551 F.3d 171, 175-76 (2d Cir.) (per curiam) (finding that fraudulent account statements sent by defendant two to four years after alleged securities violations were relevant to defendant’s intent at the time of the alleged violations), cert. denied, — U.S.-, 129 S.Ct. 2756, 174 L.Ed.2d 263 (2009); see also United States v. Mangual-Santiago, 562 F.3d 411, 428-29 (1st Cir.) (finding that evidence of bank account activity after a conspiracy had ended was relevant to defendant’s intent to conceal funds), cert. denied, — U.S.-, 130 S.Ct. 293, 175 L.Ed.2d 196 (2009); United States v. Alahmad, 211 F.3d 538, 542 (10th Cir.2000) (finding, in international parental kidnapping case, that evidence of a court order issued after the charged period was relevant because the later order found that defendant had violated a prior court order), cert. denied, 531 U.S. 1080, 121 S.Ct. 782, 148 L.Ed.2d 679 (2001).[1]
An essential element of the international parental kidnapping charge against Favreau is that Favreau removed Robbie from the United States, or retained him outside of the United States, “with intent to obstruct the lawful exercise of [Keith Miller’s] parental rights.” 18 U.S.C. § 1204(a). The majority correctly notes that evidence of the pending Vermont appeal, which did not exist during the indictment period, could not have been used to argue that Miller did not have valid parental rights during the indictment period. Maj. Op. at 688-89. But the majority ignores another relevant use of the evidence. Evidence of the pending Vermont appeal was relevant to Favreau’s defense because it tends to show that Favreau took Robbie to Canada with intent of vindicating her own parental rights, rather than with intent of obstructing Miller’s rights.
That there are several steps to demonstrating the relevance of the Vermont appeal does not mean that the evidence is irrelevant under Rule 401. See Quattrone, 441 F.3d at 188; Ravich, 421 F.2d at 1204 n.10. The appeal at issue was from a Vermont lower court order denying Favreau’s motion for recognition of a Canadian order that granted Favreau custody of Robbie. The existence of Favreau’s appeal of the Vermont lower court order suggests that Favreau attempted to use the Canadian proceedings to vindicate her own parental rights in Vermont. The fact that Favreau attempted to vindicate her own rights in the Vermont courts, together with the admitted evidence of the Canadian court proceedings, makes it more likely that she originally brought Robbie to Canada and retained him there with the intent of obtaining custody of Robbie in Canada and of then using the Canadian proceedings to vindicate her own parental rights in the United States. In turn, the fact that Favreau originally took Robbie to Canada and retained him there with the intent of vindicating her own rights both in Canada and in the United States makes it less likely that she took this step with the intent of obstructing Miller’s parental rights. Therefore, the Vermont appeal has some tendency to make a fact in issue less probable and, as a result, is relevant evidence under Rule 401.
*693 Though they are related, Favreau’s intent to vindicate her own rights and her possible intent to obstruct Miller’s rights are not one and the same. For example, imagine that Favreau took Robbie to Canada with the intent of obtaining full custody of Robbie, but also knew that Miller lived in Canada, or visited daily, and would easily be able to exercise his own parental rights. In that case, it would be clear that evidence of Favreau’s alternative motive would be relevant additional evidence to show that Favreau did not travel to Canada with the specific intent of obstructing Miller’s existing parental rights. In this case, of course, the facts are different and evidence of Favreau’s alternative motive may be less influential. The weight to give evidence, however, is a question for the jury and has no bearing on the threshold relevance determination under Rule 401. See Sir Speedy, Inc. v. L & P Graphics, Inc., 957 F.2d 1033, 1038 (2d Cir.1992) (“Any question as to the weight to be accorded a relevant document is a matter for the jury.”); see also United States v. Josephberg, 562 F.3d 478, 487-88 (2d Cir.), cert. denied, — U.S.-, 130 S.Ct. 397, 175 L.Ed.2d 302 (2009).
Furthermore, the facts of this case do not preclude Favreau from arguing that she did not have the intent required by the statute. Contrary to the majority’s suggestion, Maj. Op. at 690, the mere facts that (1) Miller had existing parental rights, (2) Favreau knew of those rights, and (3) Favreau took Robbie to Canada do not conclusively prove that Favreau took Robbie to Canada with the specific intent of obstructing Miller’s parental rights. While, as the majority suggests, Maj. Op. at 691, a jury could infer from those facts that Favreau intended to obstruct Miller’s rights, the inference a jury might reasonably draw from Favreau’s knowledge has no bearing in determining the relevance of the excluded evidence. The question is simply whether admitting evidence of the Vermont appeal “affects the mix of material information” available to the jury on the question of Favreau’s intent. Quattrone, 441 F.3d at 188. Again, what relative weight to give to the excluded evidence is the jury’s role, not ours. See Sir Speedy, 957 F.2d at 1038; see also Josephberg, 562 F.3d at 487-88.
Likewise, the fact that evidence of the pending Vermont appeal came into existence after the indictment period does not mean that it is irrelevant.[2] Cf. Mangual-Santiago, 562 F.3d at 428-29; Kelley, 551 F.3d at 175-76; Alahmad, 211 F.3d at 542. The relevance of subsequent evidence of an alternative motive is clearly demonstrated if we imagine that Robbie had a rare medical condition that could only be treated in Canada. Imagine that, knowing of Miller’s parental rights and knowing that they would be obstructed, Favreau nevertheless took Robbie to Canada intending that Robbie receive the medical treatment he needed. Assume further that a medical report was issued years after Favreau brought Robbie to Canada that confirmed that Robbie did in fact have the rare medical condition. The report would certainly be probative of Favreau’s intent in transporting Robbie to Canada, even though the report, like the pending Vermont appeal, came into existence after the charged period. Such a report would make it more likely that Favreau transported Robbie to Canada with the intent of obtaining medical treatment and not with the alternative intent of ob *694 structing Miller’s parental rights. Of course, continuing the analogy, admitting the medical report into evidence would not entitle Favreau to an acquittal. But the report would at least be relevant evidence of her actual motivation in traveling to Canada. So, too, is evidence of the pending Vermont appeal in this case.
For all of the reasons explained above, I would find that the pending Vermont appeal was relevant. Furthermore, because the District Court ruled that this evidence, which was relevant to an essential element of the crime of international parental kidnapping, was irrelevant, I would find that the District Court committed “manifest error” and exceeded its allowable discretion.[3] The majority notes that the abuse-of-discretion standard for evidentiary rulings allows for a “range of permissible decisions,” Manley v. AmBase Corp., 337 F.3d 237, 245 (2d Cir.2003) (quoting Zervos v. Verizon N.Y., Inc., 252 F.3d 163, 169 (2d Cir. 2001)), by the District Court. However, as discussed above, evidence of the Vermont appeal tended to make a fact in issue— namely, Favreau’s criminal intent — less likely. The evidence was therefore admissible on the face of Rules 401 and 402. A finding that relevant evidence is inadmissible as irrelevant is not a permissible decision under the Federal Rules of Evidence. Furthermore, the evidence was relevant not just to any issue, but rather to the central issue in the case — Favreau’s intent. See Weiss v. Chrysler Motors Corp., 515 F.2d 449, 459 (2d Cir.1975) (“Since we have found that the exclusion of [the evidence] was critical because of its relevance to the central issue of the case, its exclusion is manifest error.”). For all of these reasons, the District Court’s exclusion of the evidence was manifest error.
Likewise, with regard to whether the District Court’s error was harmless, an error committed at trial is less likely to be harmless if it speaks directly to a critical element of the prosecution’s case. See Wray v. Johnson, 202 F.3d 515, 526 (2d Cir.2000) (noting that a prominent factor in harmless error analysis is whether the trial error “bore ‘on an issue that [was] plainly critical to the jury’s decision’ ” (quoting Hynes v. Coughlin, 79 F.3d 285, 291 (2d Cir.1996))). In this case, the improperly excluded evidence went to the most critical element of the crime charged — Favreau’s intent — and, therefore, I would find that the District Court’s error was not harmless.
The majority’s reasoning in finding that any potential error was harmless is not persuasive. The majority finds that the government “was able to conclusively establish the elements of the crime based solely on the June 2000 Massachusetts Family Court order,” Maj. Op. at 690, and therefore concludes that any error in excluding the Vermont appeal was harmless. Of course, neither the Massachusetts order nor the Vermont order conclusively establishes the elements of the crime of international parental kidnapping. As explained above, the fact that Favreau brought Robbie to Canada while she knew of the court orders does not conclusively show that Favreau had the requisite criminal intent in bringing Robbie to Canada. As a result, Favreau should be permitted to introduce evidence tending to show that she did not intend to obstruct Miller’s parental rights — namely, evidence of the Vermont *695 appeal. While it is possible that the jury could infer Favreau’s specific intent based only on her mere knowledge of the orders, and that it could do so even if evidence of the Vermont appeal were admitted, I decline to speculate that evidence of the Vermont appeal would have no impact on the jury’s decision in this case.
In sum, I find that the District Court exceeded its allowable discretion by excluding evidence of the Vermont appeal, and, as a result, I would vacate Favreau’s conviction and remand the case for further proceedings as appropriate, including a new trial. Because I would vacate the conviction on those grounds, I need not reach Favreau’s other arguments on appeal.

. It should be noted that the District Court’s exclusion of the evidence in this case was based solely on its determination that the evidence was irrelevant under Rule 401. The District Court did not go on to consider whether the evidence, even if relevant, would be excludable under Rule 403, and thus that issue is not before us.

. The majority may not disagree with this assertion. The majority only points out that the Vermont appeal “did not exist’’ at the time Favreau went to Canada in the context of its argument that the appeal was not relevant to the existence of Miller’s parental rights during the indictment period. Maj. Op. at 688

. While there is some support for the proposition that "[rjelevance is a question of law,” United States v. Torniero, 735 F.2d 725, 730 (2d Cir.1984), cert. denied, 469 U.S. 1110, 105 S.Ct. 788, 83 L.Ed.2d 782 (1985), to be reviewed de novo instead of under an abuse-of-discretion standard, I need not decide that question because I find error in the District Court’s decision even under the more lenient abuse-of-discretion standard.